IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

JERRY D. GUESS and GUESS & CO. CORPORATION,

Defendants.

8:24-CV-172

MEMORANDUM AND ORDER

This is an action for violations of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq*. The plaintiff, the United States Securities and Exchange Commission, has moved for default judgment against the defendants, Jerry Guess and his eponymous company, Guess & Co. Corporation ("the Company"), for fraud in violation of §§ 17(a)(1) and 17(a)(3) of the Act. Filing 38. The defendants waived service on July 15, 2024. *See* filing 19; filing 20. Neither defendant has timely answered or otherwise pled, and neither is represented by counsel in this matter. *See* filing 34. The Clerk filed an entry of default on November 14, 2024. Filing 27; *see* Fed. R. Civ. P. 55(a). For the reasons discussed below, the Court will grant the government's motion for default judgment.

## I. STANDARD OF REVIEW

After default is entered against a party that has not appeared or has otherwise failed to defend, default judgment may be sought. Fed. R. Civ. P. 55. On such a motion, the Court assumes the truth of the well-pleaded factual allegations in the complaint, other than those relating to the amount of

damages. Fed. R. Civ. P. 8(b)(6); see also *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); *Sampson v. Lambert*, 903 F.3d 798, 805 (8th Cir. 2018). However, it remains for the Court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (quoting *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010)); *see also, e.g., Sampson*, 903 F.3d at 806.

## II. BACKGROUND

The following summary is based on the facts in the operative complaint (filing 14): Jerry Guess is the founder, president, and chairman of the Company, which was privately held. Filing 14 at 7. Guess fully controlled the Company: he was the only person who could make hiring decisions, and he directed the daily activities of the Company.

Between June 2021 and April 2022, Guess solicited investors to purchase the Company's stock. *See* filing 14 at 5. Guess personally wrote and sent unsolicited emails to at least 57 prospective investors; he was the only person to do so. Filing 14 at 5-6. Guess told prospective investors the Company was a "diversified energy, health care, technology, and real estate company committed to revitalizing rural America." Filing 14 at 7. He told investors that it had earned millions of dollars in the past and projected the business would earn billions of dollars in 2021 and 2022. Guess attached various versions of the Company's business plan to some of the solicitations. The business plan stated that the Company was focused on developing and operating "mega rural" hospitals, data centers, and real estate communities. *See* filing 14 at 7.

In reality, the Company's only business activity during the stock offering was selling computers to electronics shops. *See* filing 14 at 8. Specifically,

between June 2021 and April 2022, the defendants sold nineteen computers to four different electronics shops, for a total of $14,654. Filing 14 at 8. The Company did no business with any "mega rural" hospitals, data centers, or real estate communities. *See* filing 14 at 8.

The Company's internal records indicate it sold $9.8 million of products and services to six customers from 2019 to 2021. Filing 14 at 8. However, those transactions were either fictional or illegitimate. Filing 14 at 8. Five of the "customers" were entities owned and controlled by Guess; the other was another business owned by an individual who served as the Company's CEO for a brief period. *See* filing 14 at 3, 8.

While Guess projected that the Company would earn *billions* of dollars in revenue, these projections had no basis in reality. The Company had no customers or revenue, other than a handful of computer sales. The Company did not have the proper facilities or employees to manufacture, distribute, or provide its purported products or services. Filing 14 at 10.

Ultimately, none of the 57 prospective investors to whom Guess sent a solicitation were defrauded; Guess did not sell any shares of the Company's stock. Filing 14 at 10. The government now sues for violations of § 17(a) of the Securities Act, for use of interstate commerce for the purpose of fraud or deceit in connection with the offer of securities. *See* filing 14 at 11; 15 U.S.C. § 77q(a).

## PROCEDURAL BACKGROUND

The government filed its complaint in May 2024 (filing 1), and an amended complaint in July 2024 (filing 14). Guess requested, and was given, several extensions to file a response or obtain counsel. Filing 21; filing 23. On October 11, 2024, the Court ordered Guess to obtain counsel and file an answer or other responsive pleading no later than November 8, 2024, and cautioned

the defendants that additional extensions would be unlikely without a showing of extraordinary circumstances and good cause. Filing 25.

Guess failed to answer or otherwise plead by the November 8 deadline. The government moved for the clerk's entry of default on November 14. Filing 26. A month later, Guess again moved to extend the deadline to file an answer and to set aside the default; the Court unequivocally denied the motion. Filing 34. Guess failed to present extraordinary circumstances or good cause to set aside the default, and instead he blatantly disregarded the Court's deadlines:

> At any point over the last several months, Mr. Guess could have filed an answer denying the SEC's allegations, but he has not . . . . [T]he defendants' intentional failure to meet their pleading deadlines even after being given several months of extensions, combined with their complete failure to show they have a meritorious defense, demonstrates to the Court that good cause does not exist to set aside default.

Filing 34 at 5-6.

On February 24, Guess asked the Court to reconsider the motion to set aside the default, and requested a 90-day stay to obtain counsel. *See* filing 34, filing 37. The Court denied the motions because Guess failed to show any change in circumstances warranting reconsideration—Guess failed to show exceptional circumstances, new evidence, or manifest errors of law. Filing 42 at 3. He did not provide any indication or evidence that he had a meritorious defense to the government's claims. Filing 42 at 2. And, as the Court had already observed, Guess "could have filed an answer at any point in the last

several months, rather than sending letters asking for extensions of time on the last days of the deadlines to do so." Filing 42 at 2.

On March 14, shortly after the government's motion for default judgment, Guess filed an answer *pro se*. Filing 43. He requested leave to do so a month later. Filing 45; *see* Fed. R. Civ. P. 6(b)(1)(B). The answer does not apply to the Company. *See Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996). The government has moved to strike the answer. Filing 44. Guess has again requested that the Court set aside the default. *See* filing 43; filing 45.

## III. DISCUSSION

### 1. Procedural Issues

Before entering default judgment, the Court must consider whether to allow Guess to file an answer, and whether to set aside the entry of default. Courts consider several factors to decide whether to set aside an entry of default, including whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998).

A "heavy focus" is on the blameworthiness of the defaulting party. *Id.* Courts distinguish between contumacious or intentional delay and a "marginal failure" to meet pleading or other deadlines. *Id.* The former is "rarely, if ever, excused." *Id.* Under these circumstances, the Court has no issue determining that Guess is proceeding in bad faith. Guess has not "marginally" failed to meet the pleading deadlines—he has repeatedly ignored Court orders and deadlines. His explanation for the continuing delay in his renewed motion is that "life happened." Filing 45 at 2.

There is little to mitigate Guess's behavior. He asserts that he has been communicating with the government, *see* filing 41, and there is no indication that he has not received any of the filings in this case.[1] Guess asserts that his incarceration in October 2024 is an extraordinary circumstance that excuses his delays, but the Court already rejected those reasons—Guess was aware of the Court's deadline when he voluntarily surrendered to law enforcement on outstanding warrants. Those deadlines had already been pending for several months, and Guess waited until the deadline expired to request another extension. *See* filing 42 at 2. Guess has provided only vague explanations as to why he has been unable to obtain counsel or respond in this case, and none give any indication that Guess takes the Court's deadlines seriously.

Additionally, Guess has not provided the requisite evidence that he has a meritorious defense. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008). "Bald allegations" will not sustain the burden of the defaulted party on this issue. *Id.* Rather, a defaulted party must proffer *evidence* that would permit a finding for the defaulting party. *Id.* Such might include affidavits regarding conflicting accounts of the facts, *see Johnson*, 140 F.3d at 785, or some other "sufficient elaboration of facts or evidence to permit the district court to determine whether, if believed, the defenses were meritorious," *Stephenson*, 524 F.3d at 914.

Here, as in *Stephenson*, Guess has provided "simple assertions unsupported by specific facts or evidence." *Compare id.*, *with* filing 45, *and*

---

[1] Guess requested a 90-day stay on March 13, 2025 (filing 41), which was more than 90 days ago. While that motion was denied (filing 42), since that time, he has not acquired counsel, nor has the government indicated that it no longer wishes to pursue this matter, despite Guess's assertions.

filing 43. This is insufficient to establish the existence of a meritorious defense. Guess has included, in his answer, an inaccurate legal description of how the government must prove violations of § 17(a) of the Securities Act as a potential defense. Filing 43 at 6. This incorrect legal analysis provides no basis for a defense. And factually, Guess has not provided any proof that would permit "a finding for the defaulted party." *See Stephenson*, 524 F.3d at 914.

It has now been a year since the government's amended complaint, yet no discovery has been completed. There is little to indicate the government would suffer "concrete" harm such that prejudice would weigh against setting aside the default. *See Stephenson*, 524 F.3d at 915. However, Guess's contumacious conduct, and his lack of a meritorious defense, demonstrates to the Court that good cause does not exist to set aside the default. *See Iowa St. U. Research Foundation, Inc. v. Greater Continents, Inc.*, 208 F.R.D. 602, 605 (S.D. Iowa 2002) (a showing of prejudice to the plaintiff is not required to refuse to set aside an entry of default).

Further, Guess did not seek leave to file his answer, despite the Court ruling that Guess would not be provided any more time to file the same. *See* filing 42 at 1. *Pro se* parties are not excused from complying with court orders and the Federal Rules of Civil Procedure. *Acka*, 86 F.3d at 856. An answer may be filed out of time if a party failed to act because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect exists where a party acts in good faith, and there is some reasonable basis for noncompliance with the rules. For the same reasons already explained, Guess has failed to demonstrate excusable neglect in filing an answer four months after the last deadline.

Guess has continuously offered the same explanations for his delay; the Court has continuously rejected those explanations as reasons to prolong the answer deadline. The Court will grant the government's motion to strike

Guess's answer (filing 44), and will deny Guess's motions to set aside default (filing 43; filing 45).

2. LIABILITY

The government asserts that Guess and the Company violated the Securities Act. The Act prohibits the "use of interstate commerce for the purpose of fraud or deceit" in connection with an offer or sale of any securities. § 77q(a). Directly disseminating false or misleading information to prospective investors with the intent to defraud violates the Act. *See Lorenzo v. SEC*, 587 U.S. 71, 79 (2019). Specifically, the government asserts that Guess and the Company employed a "scheme" to defraud prospective investors, violating § 17(a)(1), and engaged in a "transaction, practice, or course of business" that operated or would operate as a fraud or deceit, violating § 17(a)(3). Filing 14 at 11.

A violation of § 17(a) requires a showing that the defendants made a material misstatement or omission in connection with the offer, sale, or purchase of a security by means of interstate commerce. *SEC v. Shanahan*, 646 F.3d 536, 541 (8th Cir. 2011). A violation of § 17(a)(1) also requires a showing that the defendants made misrepresentations or misleading omissions with scienter; violations of § 17(a)(3) require proof they acted negligently. *Id.* To establish a corporation's scienter, the mental state of an officer acting on the corporation's behalf may be imputed to it. *See SEC v. Markusen*, 143 F. Supp. 3d 877, 890 (D. Minn. 2015); *cf. Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106-07 (10th Cir. 2003) (discussing Rule 10b-5 under § 78u); *Lorenzo*, 587 U.S. at 78-9 (language in Rule 10b-5 is analogous to § 17(a)).

The element of scienter requires proof of intent to deceive, manipulate, or defraud. *Id.* at 533. It is insufficient to show that a defendant should have

known that a material statement or omission was false or misleading, but scienter may be based on "severe recklessness." *Id.* at 533-34. Severe recklessness is described as an "extreme departure from the standards of ordinary care," that present a "danger of misleading" investors, "which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.*

The facts in the operative complaint indicate that Guess either intentionally knew the information he provided in emails was false, or he was severely reckless in providing the projections. As the person in charge of the Company, Guess knew the business's revenue, and he falsely stated that the revenue in 2020 "ranged from $5 million to $25 million." Filing 14 at 9. It's apparent that the Company could not have earned *billions* of dollars in revenue based on its business history (generating under $15,000 over several years) or its capacity (both in facilities and employees).

Guess's intent to defraud can be inferred from his pattern of deceptive and manipulative conduct and history of fraud. Filing 14 at 3-4; *see Markusen*, 143 F. Supp. 3d at 890. He was at the very least severely reckless in providing impossibly exaggerated projections about the Company's business and provably false statements about the business's revenue.

It's not a requirement that a fraudulent stock *offer* turn into an actual sale of stock; the statute makes it unlawful to employ a scheme to defraud "in the offer *or* sale of any securities." § 17(a) (emphasis added); *see also Lorenzo*, 587 U.S. at 79 (provision in § 17(a)(1) "capture[s] a wide range of conduct"). The fact that Guess's solicitations went unanswered does not absolve him of liability for providing materially false statements in an attempt to sell stock.

The well-pleaded factual allegations in the complaint indicate that Guess and the Company employed a scheme to defraud, either intentionally or

with severe recklessness, when they emailed prospective investors with materially false statements about the Company's business plans, past revenue, and future revenue projections. The government has stated a claim that Guess and the Company violated § 17(a) of the Securities Act.

### 3. INJUNCTIVE RELIEF

The government seeks to enjoin Guess and the Company from certain securities-related activities. The Securities Act provides that, where § 17(a) has been violated, the government may bring a lawsuit to "enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond." § 77t(b).

Courts must shape injunctions to provide full relief without inflicting unnecessary pain; such injunctions must be intended to prevent future misconduct rather than punish past misconduct. *SEC v. Gentile*, 939 F.3d 549, 560 (3d Cir. 2019); *SEC v. Stubos*, 634 F. Supp. 3d 174, 191-92 (S.D.N.Y. 2022). To obtain an injunction, the SEC must prove that the defendant violated the Securities Act, and that there is a reasonable likelihood of further violation in the future. *SEC v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990). An important factor in this regard is the degree of intentional wrongdoing evident in a defendant's past misconduct. *Aaron v. SEC*, 446 U.S. 680, 701 (1980).

Once the government has demonstrated success on the merits, the Court must balance three factors to determine whether injunctive relief is merited: (1) the threat of irreparable harm; (2) the harm suffered by the nonmoving party; and (3) the public interest. *See Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998); *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

(a) Officer and Director Bar

The Securities Act expressly permits a court to prohibit any person from acting as an officer or director of any public company. *See* § 77t(e); *SEC v. Cap. Sol. Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 896 (D. Minn. 2014). Such a prohibition may be conditional or unconditional, and permanent or for such a period of time as the Court determines. § 77t(e). The Court enjoys substantial discretion in tailoring this "officer and director bar," based on the facts and circumstances of the case. The government has requested such relief here. Filing 39 at 16.

A lifetime officer and director bar is an extraordinary remedy, usually reserved for those who have engaged in prior securities violations and under circumstances suggesting the likelihood of future violations. *SEC v. Chan*, 465 F. Supp. 3d 18, 34 (D. Mass. 2020). Courts, therefore, impose such bars for more specific periods of time.

Here, while the complaint alleges that Guess has a history of fraudulent conduct, this is the first instance of a securities violation. *See* filing 13 at 3-4. The Company was not publicly traded, and the facts in the operative complaint indicate that the conduct at issue involved a private placement offering. *See* filing 14 at 5. There is no indication from the operative complaint that Guess will attempt to be an officer or director of a publicly traded company. Therefore, the government has failed to demonstrate a reasonable likelihood of further violations of securities laws so as to justify the injunctive relief in § 77t(e).

(b) Conduct-Based and Obey-the-Law Injunctions

The government also requests that Guess and the Company be prevented from *ever* "participating in the issuance, purchase, offer, or sale of any security," except for purchasing or selling securities for Guess's personal

account. *See* filing 39 at 15. This is described as a "conduct-based" injunction. Enjoining this kind of behavior is within the Court's inherent equitable authority and the broad statutory provision in § 77t(b). *E.g., SEC v. Langemeier*, No. 3:22-cv-269, 2025 WL 688974, at *3 (D. Nev. Mar. 4, 2025).

Some courts have issued the relief requested here where a defendant already ignored a different injunctive order, and a "stricter injunction" was warranted. *SEC v. Mattera*, No. 11-cv-8323, 2013 WL 6485949, at *18 (S.D.N.Y. Dec. 9, 2013); *see also SEC v. Sneed*, 3:20-cv-2988, 2021 WL 4202171, at *10 (N.D. Tex. Sept. 10, 2021); *SEC v. Wellness Matrix Grp., Inc.*, No. 8:21-cv-1031, 2023 WL 5235177, at *7 (C.D. Cal. Aug. 10, 2023); *cf. SEC v. Mine Shaft Brewing LLC*, 2:21-cv-457, 2023 WL 6541552, at *12 (D. Utah Oct. 6, 2023) (injunction warranted where defendant ignored two state orders not to engage in broker-dealer activities). And some courts issue such an injunction pursuant to a consent decree or unopposed motion. *See SEC v. Reliable One Resources, Inc.*, No. 6:23-cv-06, 2023 WL 1818316, at *1 (E.D. Tex. Feb. 8, 2023).

These conduct-based injunctions are often justified by a defendant's conduct during the proceedings, where a defendant makes clear to a court his or her intention to continue engaging in securities dealing. *E.g., SEC v. Silea*, No. 4:20-cv-737, 2022 WL 2346384, at *3-4 (E.D. Tex. June 28, 2022); *SEC v. Skinner*, 2:21-cv-5273, 2022 WL 2784811, at *8 (C.D. Cal. June 17, 2022). On the other hand, in the default judgment posture, courts may lack a developed factual record to support such an injunction. *SEC v. Garcia*, No. 1:22-cv-118, 2023 WL 3976235, at *2 (D. Colo. May 10, 2023). *But see SEC v. Page*, 2024 WL 4468040, at *12-13 (E.D.N.Y. Sept. 13, 2024) (conduct-based injunction warranted where defaulted corporate defendants made "no representation

before this Court that the conduct will not reoccur or that Defendants have recognized the wrongful nature of their behavior").

The facts in this case indicate that Guess is a first-time violator of securities regulations. While Guess acted with scienter, the alleged conduct lasted less than a year, and Guess voluntarily stopped soliciting investors before this lawsuit began. *See* filing 14 at 8. Other courts have denied requests for these types of injunctions in similar circumstances. *See Langemeier*, 2025 WL 688974, at *3; *Garcia*, 2023 WL 3976235, at *2.

The government also asks the Court to prohibit Guess and the Company from violating the Securities Act. *See* filing 39 at 13. These types of "obey the law" injunctions are not favored by courts. *See Powell v. Noble*, 36 F. Supp. 3d 818, 836-37 (S.D. Iowa 2014) (citing *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987)). That's because injunctions should describe in reasonable detail the acts restrained, and should be narrowly tailored to the conduct at issue. *See id.*; Fed. R. Civ. P. 65(d). But given the nature of fraud in the securities context, other courts have determined that obey-the-law injunctions are appropriate in these types of cases. *E.g., SEC v. N. Dakota Dev., LLC*, No. 4:15-cv-53, 2018 WL 11458921, at *10 (D.N.D. Apr. 23, 2018); *Cap. Sol.*, 28 F. Supp. 3d at 903; *SEC v. McLellan*, 737 F. Supp. 3d 95, 110 (D. Mass. 2024) ("it can be incredibly thorny to try to figure out [exactly] what kind of fraud someone will engage in next," and an obey-the-law injunction was as "tailored" as possible to prevent future wrongdoing).

As stated above, injunctive relief in cases like these is warranted where the government shows there is a reasonable likelihood of further violation in the future. *Comserv Corp.*, 908 F.2d at 1412. This can be satisfied by the degree of intentional wrongdoing evident in a defendant's past misconduct. *Aaron*, 446

U.S. at 701. The Court must also balance the threat of irreparable harm, the harm suffered by the nonmoving party, and the public interest.

The facts in this case demonstrate that Guess sent emails to 57 prospective investors over the course of 11 months (between June 2021 through April 2022) on behalf of the Company. Filing 14 at 5. Those emails contained materially false information, and Guess was, at the very least, severely reckless in providing false statements about the company's past revenue and exaggerated projections about future revenue.

Guess voluntarily stopped sending solicitations. No one invested in the Company; there are no losses or victims. And there's no allegation that Guess has engaged in other fraudulent conduct since he stopped sending those emails in early 2022. *See* filing 14.[2] The government argues, and the Court agrees, that a risk of future harm can be demonstrated by evidence of past, recurrent violations, and such a risk satisfies the threat of irreparable harm factor. Filing 39 at 13 (citing *SEC v. Chappell*, 107 F.4th 114, 128-29 (3d Cir. 2024); *SEC v. Gruenberg*, 989 F.2d 977 (8th Cir. 1993)).

This Court is persuaded by the reasoning and action taken by the District of Minnesota, and will issue the requested injunction, permanently prohibiting Guess and the Company from future violations of the Securities Act. *See, e.g., Cap. Sol.*, 28 F. Supp. 3d at 896; *Markusen*, 143 F. Supp. 3d at 893. And, the Court will specifically prohibit both Guess and the Company from participating in the issuance, purchase, offer, or sale of any security for a

---

[2] Guess has, however, been arrested for other criminal conduct, which (at least on its face) does not involve fraud. The Court has taken judicial notice of the criminal proceedings in the Durham Superior Court in North Carolina (case nos. 24-cr-434407, 24-cr-408116, and 24-cr-408117). *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

period of five years, though Guess may purchase or sell securities for his own account.

4. CIVIL PENALTY

The government also seeks a statutory civil penalty pursuant. *See* § 77t(d). Such a penalty is to be determined by the Court in light of the facts and circumstances. *See* § 77t(d)(2). Courts consider things like the egregiousness of the violation, whether such violations are repeated, the degree of scienter, the deterrent effect given the defendant's financial worth, the risk of loss, and other relevant mitigating or aggravating factors. *See* *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995); *SEC v. Moran*, 944 F. Supp. 286, 297-98 (S.D.N.Y. 1996). The purpose of the civil penalty is to both deter future violations and punish the individual violator. *Moran*, 944 F. Supp. at 296 (quoting H.R. Rep. No. 101-616, at 1384-86 (1990)).

The statute provides statutory maximums in three different tiers, based on the severity of the violation. The first tier, for a natural person, is capped at $5,000; the second, $50,000; and the third, $100,000.[3] § 77t(d)(2). The government asserts the third tier is appropriate, and it requests a civil penalty in the amount of $230,464 (despite the $100,000 limit). Filing 39 at 17. The government only requests a penalty for Guess as a natural person, not the Company as an entity. *See* filing 39 at 17.

The facts in the operative complaint justify a second tier, but not a third tier, penalty. The third tier is imposed only when the violation "directly or

---

[3] The statute allows civil penalties totaling "the gross amount of pecuniary gain to such defendant as a result of the violation," *see* § 77t(d)(2), but the defendants had no such gain in this case.

indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." § 77t(d)(3). The Court is not convinced that Guess's conduct created a significant risk of substantial losses; none of the prospective investors were interested in even responding to Guess's solicitation.

The amount assessed for disgorgement is often used as a benchmark for courts calculating a civil penalty. *See* § 77(d)(2) (penalty shall not exceed gross amount of defendant's pecuniary gain); *see also, e.g., SEC v. Happ*, 392 F.3d 12, 32-33 (1st Cir. 2004); *SEC v. Yuen*, 272 F. App'x 615 (9th Cir. 2008); *SEC v. Zada*, 787 F.3d 375, 383 (6th Cir. 2015) . In this case, there being no victims, there is no disgorgement amount to consider.

In this case, the maximum penalty is $50,000. § 77(d)(2)(B). There's not sufficient reason to unduly "punish" Guess when his statutory violation was relatively inconsequential, and the injunctive relief is sufficient to deter future wrongdoing, fulfilling most purposes of the statute. *See Moran*, 944 F. Supp. at 296. In light of the facts and circumstances of this case, the Court will impose a penalty totaling $15,000.

## IV. CONCLUSION

Guess's behavior since the inception of this lawsuit does not warrant further extensions of time for him to file an answer. Therefore, his untimely answer, filed without leave and without excusable neglect, will be stricken. The Court will enter default judgment in favor of the government and against Guess and the Company. Guess and the Company will be permanently enjoined from violating the Securities Exchange Act, and neither Guess nor the Company may participate in the issuance, purchase, offer, or sale of any security for a period of five years, except to the extent that Guess may purchase

and sell securities for his own account. Guess must also pay a civil penalty in the amount of $15,000.

IT IS ORDERED:

1. The government's motion for default judgment (filing 38) is granted.

2. Guess's motion to set aside default (filing 43) is denied.

3. The government's motion to strike filing 43 (filing 44) is granted.

4. The Clerk of the Court is directed to strike filing 43 from the record.

5. Guess's motion for leave to file an answer (filing 45) is denied.

6. A separate judgment will be entered.

Dated this 7th day of July, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge